Thank you Judge Silverman, and may it please the court. Robert Silvers for the petitioner. I'd like to reserve two minutes for rebuttal if I may. The issue here is whether the BIA erred in calculating Mr. Sandoval's term of imprisonment, and there are two independent reasons for holding that it did. The first is that a jail term ordered merely as a condition to a sentence of probation is not countable as a term of imprisonment under the INA. And the second is that under this court's recent decision in U.S. v. Gomez-Leon, Mr. Sandoval's term of imprisonment was less than a year, even if a probationary jail condition is countable. As Gomez-Leon recognized under California law, a defendant can only be sentenced to a maximum total of 365 days in county jail as a condition of his probation. There is a single exception to this rule where the defendant agrees to waive any credit from his initial jail term that would push the total time served past the one-year mark. But it is the government's burden to prove such a waiver of credit, which is also referred to as a Johnson waiver after the original California Court of Appeal case which established that waiver. Here, the record shows that there was no such waiver and that Mr. Sandoval received a total term of imprisonment of just 352 days. And the way you arrive at that calculation is by examining pages 116 and 119 of the administrative record. At page 116, the minute orders from the Superior Court show that Mr. Sandoval received a sentence of probation with a 180-day jail condition. His probation was revoked and reinstated, and he received a modified probationary jail condition of 352 days. The BIA added 180 plus 352 to hold that Mr. Sandoval received a term of imprisonment of 532 days. But this was error because the subsequent 352-day sentence included the initial 180-day jail condition. And that's established on page 119 of the administrative record where the minute orders state, and I quote, defendant given total credit for 352 days. Now, the record is devoid here of any evidence whatsoever that Mr. Sandoval waived credit from his initial term. And in approaching this issue, I think we have to presume here that the state trial judge was acting within his legal authority when he imposed sentence, and that he knew he was statutorily limited by California Penal Code Section 19.2 to a maximum county jail term of 365 days. And that's what he did. He imposed 352 days total, or just under a year, the statutory maximum. Mr. Silvers, let me ask you this. I get the impression that the government does not disagree with you up to this point. They filed, you know, that motion to remand. They say, if I understand their position correctly, well, Gomez-Leon was a new case. They didn't know what they had to prove at that time. They should go back and be able to show whether or not this 180 days was waived by the petitioner. What's your answer to that? My response to that, Judge Silverman, is that there's no need for the court to remand on this legal question which decides the case, which the BIA has already had an opportunity to address because it addressed explicitly what it found Mr. Sandoval's term of imprisonment to be, and it made a finding of 532 days. Moreover, this court retains its jurisdiction to consider its own jurisdiction. And the government's argument that this court has to remand to somehow satisfy itself of its own jurisdiction is meritless because this court's jurisdiction is not remotely endowed. This court retains jurisdiction to consider whether an underlying conviction and underlying sentence constitute an aggravated felony. These are already issues addressed by the board. So there's no Ventura issue here in terms of allowing the agency an opportunity to address the question in the first instance, nor does the government claim that there's a Ventura issue here. As for the point that Gomez-Leon stands for new law, I would disagree with that proposition. Gomez-Leon is a new case, but all it is is a recognition of California state sentencing law that has been in existence for decades. The case on which Gomez-Leon relied was People v. Johnson, which was decided in 1978. The statutory maximum, a number of days in county jail, is California Penal Code 19.2, which has been in existence even longer than People v. Johnson. So the notion that somehow a mere judicial recognition by this court of what California law has always been necessitates a remand to the BIA is meritless in this instance. I would also note that this case actually closes very trackly this court's recent en banc decision in 2006, Fernandez-Ruiz v. Gonzalez. In Fernandez-Ruiz, the government was making a substantively identical request for remand. It cited a new case that came down, Leocal v. Ashcroft, and it noted that while the board had the opportunity to address the underlying conviction under the Taylor categorical approach, it had never had the opportunity to apply the modified categorical approach. This court denied the request for remand. It said that what mattered is that the board had an opportunity to address the underlying question, and if it did so under a slightly different rubric, the categorical approach as opposed to the modified categorical approach, that was okay. The concerns that animate decisions like Ventura were satisfied. Moreover, the concerns that animate decisions like Chevron, Chevron deference, were satisfied here because the question involved here is a straight interpretation of general state court criminal statutes. Those are not committed to agency expertise, a point expressly relied upon in Fernandez-Ruiz in denying the government's motion to remand. I'd also emphasize that remand here is not a harmless process. Remand here, my client has been removed to Mexico and was separated from his family here in the United States. He has been through the administrative process for years, and a remand to the BIA to go back to the IJ for further fact-finding with a possible future appeal to the BIA and then taking another appeal to this court could mean three, four more years easily in the administrative process. And that is a serious harm to inflict on my client, who has already properly raised these arguments below, in which the board erred. The board had an opportunity to address them. There's simply no need for a remand here. As for the Cardenas-Uriarte case, which is cited by the government as its sole support for remand, Cardenas is easily, easily distinguishable from the facts of this case for two simple reasons. The first is that in Cardenas-Uriarte, the board had never had the opportunity to address the question of whether Mr. Cardenas had been convicted in states other than Arizona. Here, on the other hand, the board has already had the opportunity to address the precise question at issue. What was the length of Mr. Sandoval's term of imprisonment? And of course, a necessary part of that is considering California state sentencing law, which had been in the books at the time of the initiation of the removal proceedings. The second distinguishing factor between this case and Cardenas-Uriarte is that in Cardenas-Uriarte, let's say, there was missing evidence in the record. There was no evidence in the record of the state rap sheets from states other than Arizona. That meant that neither the court nor the board could determine one way or the other whether Mr. Cardenas had been convicted in any of those other states. If you wanted to reserve two minutes, and I see you're down to about a minute and a half, did you want to keep going or do you want to reserve? No, I will reserve. Thank you, Judge Sandoval. Good morning. Good afternoon. Good morning, Your Honor. Please, the court. Stuart Nickam on behalf of the respondent in this case. The government's position is that this case should be remanded to the board for determination as to the applicability of Gomez-Leon. And that position obviously is laid out in our recent motion to remand. The petitioner is claiming that this court should decide this case in the first instance and should make a determination essentially saying that this petitioner did not serve more than one year in incarceration, where the evidence is at best inconclusive and I think actually supports the idea that this petitioner did in fact waive the credits and was sentenced to more than 365 days. His answer is, well, you had your day in court. You should have proved that when you were in the agency. I think the response to that question is that this is an issue that was never raised. This wasn't something where the petitioner ever made a factual assertion that his subsequent sentence had included credit for his earlier sentence. In fact, in his enduring the ---- It's not his to raise. It's yours to disprove. It's definitely the government's burden to prove deportability by kind of convincing evidence. However, when you have a situation where the evidence in the record here suggests that he was sentenced to 180 days and then the minute orders state and it's not he was sentenced to 352 days. It states an additional 352 days. During the removal proceedings, the petitioner was asked how much time did you serve. This is on page 88 of the administrative record. He says, I did 50 days out of 180 days. And then I did about 240 days out of the 350 days they sentenced me to. Now, I don't mean to suggest that that carries the government's burden of proof in establishing more than a year in recarceration. But on the evidence in the record, I think the DHS attorney, the immigration judge, could reasonably conclude that there wasn't an issue as to whether or not he wasn't challenging this idea that there was more than a year of incarceration. Essentially, it's a legal question, how we interpret that sentence. You're not going to prove more facts, are you? They're not going to prove more facts. It's just going to be an argument about what the judge's words meant. No, Your Honor. I do think there's a factual element to this question. Well, what facts would you prove? Well, if the petitioner did, in fact, waive credit for his earlier jail term, so. Will you offer proof on that? What's that? Are you going to offer proof? Your Honor, we are asking that the case be remanded to the board for judicial reference. No, I'm asking you, what will you offer proof on? I think you could introduce, for example, the transcript of the sentencing hearing on the probation violation. So. You're going to get that and offer that as proof. I think that DHS should have the opportunity to get that. And again, I. Judge Newton is asking the same thing I was wondering about. If we send it back, do you really have the goods to prove it? Or are you just form over substance? Well, no, Your Honor. I mean, I do think. Have you looked at the transcript and would it support your view? I haven't seen a transcript. Yeah, I'm somewhat hesitant to rely on this, because we've withdrawn the argument that the additional evidence in the administrative record, the court should look at that. So we've withdrawn that argument with respect to the merits of the claim. Did you say you have not seen the transcript? No, Your Honor, no. Are you just guessing what might be in it? I do not know what's in the transcript, no, no. But I think there's a factual question here as to whether or not this petitioner did, in fact, waive the credit for the earlier term. And had the petitioner made some factual assertion in front of the immigration judge saying, hey, wait a minute, that subsequent sentence included credit for the earlier term, or yeah, I was sentenced to 352 days, but I think they gave me credit for earlier stuff. Had there been a factual assertion, he just would have had the opportunity to present evidence on that fact. And we're looking here at a legal argument that the petitioner has raised at this time, and the government is saying let's remand it back to the board for consideration. Well, we're looking at a legal argument that was never raised in front of the immigration judge, that was never raised in front of the board. And to suggest that the immigration judge or the DHS attorney should have somehow foreseen that there was this obscure provision of California law that indicates that subsequent sentences can include credit for an earlier one if it's more than one year, that that somehow should have been, the DHS should have defined that fact, is holding the agency to, I think, a very high standard. And in this situation where it was not raised at any point during the proceedings before the agency, that to now make, you know, have this court make a determination based on, again, you know, the absence of evidence in the administrative record, like I said, I think the evidence is contrary. Yes, the government has the burden of proof at every point. And since you didn't choose to prove this, well, you forfeited it. Well, yes, the government has the burden of proof in proving the affordability of right-of-way and forensic evidence. But when you have an argument that, like I said, was never raised in front of the immigration judge. No, but you've got to, when you have the burden, you have to anticipate, you know. But how would the DHS attorney or the immigration judge anticipated this idea that, like I said, this obscure provision of California law. It's not the immigration judge. It's the government prosecuting the case. Well, I mean, whoever the responsibility falls on, like I said, it, I mean, to require that that should have been foreseen by the government and that, you know, that the. . . Well, if you admit at least that someone ambiguous and if you were the government lawyer back then, you should have said, well, I've got to prove it. I'll get the transcript. Well, of course. But I think the government, I mean, the government had evidence that suggested that he was sentenced to more than a year incarceration. It had this minute order that said 180 days plus an additional 352 days. Is it in his. . . It's a case that's been on the books for years and years that says you don't accumulate. It's a California case. You don't accumulate the days. That's correct. It's a California state law case. And it's based on a. . . And why aren't you held to that? Well, yeah, I mean, I think that after this Court's decision in Gomez-Leon, it makes sense to hold this to the standard. When you have an immigration case or a sentencing case, it really does deal specifically with this issue. But if we're saying that, you know, any potential argument based on state law or state case law that could potentially affect the ultimate outcome of the proceedings has to be preemptively addressed by DHS, I mean, you know, how would the DHS attorney have known that this provision of California law exists? It was never raised. And especially given the fact, like I said, there was factual evidence in the record that this guy was sentenced to more than 365 days. He said in his own statement that I did 50 days out of 180, then I did 240 out of 350. In those circumstances, to require DHS to preemptively realize, you know, precognition of realizing that this argument will be raised at a later stage in the proceedings, I think, again, I think that holds the government to an incredibly high standard. And, again, I think this is a legal question, but it has factual predicates which are in question here. And in those circumstances, the case should be remanded to the board for consideration, which, I mean, is exactly what the court did in Cardenasio-Arte. It's not what it did in Gomez versus Leon or Gomez-Leon. Well, I mean, I think when you're dealing with a criminal case, you have double jeopardy concerns. I think the distinction between the sentencing guidelines and immigration law may be the reason behind that. Also, Gomez-Leon may have been something where it was raised originally in the other proceedings. I don't think the case itself makes explicit whether or not that issue was raised in front of the district court. If there are no further questions, I will submit on those comments. Thanks very much. Thank you. Silvers, you've got about a minute or so left. Thank you. The government concedes that at best the record is inconclusive as to whether Mr. Sandoval entered a Johnson waiver. That indeterminacy, if it exists, does not suggest the need for a remand. It suggests that the government has failed in its burden to prove removability by clear and convincing evidence under the statutes regulating removal proceedings and under the burden that was noted in Gomez-Leon. And second of all, as to the government's argument that somehow Mr. Sandoval did not raise these claims with particularity below to the IJ, this court has never insisted that pro se aliens filing handwritten papers to the agency raise with particularity a given legal argument. All that's required is notice of the general issue that is being raised. Here, the length, contesting the length of the term of imprisonment. And Mr. Sandoval did that before the IJ, and he did it before the BIA, and he's doing it now in front of the Ninth Circuit. This case is ripe for adjudication now on the papers before it. There's no need for a remand, and we'll rest on that. Thank you. Thank you, Silvers. Mr. Nickham, thank you as well. The case just argued is submitted. Mr. Silvers, we know you and your firm have taken this on a pro bono basis. We appreciate that very much. Thank you. 0755004, A. Farber and Partners, Inc. v. Garber. Each side will have 15 minutes.
judges: Noonan, Silverman, Conlon